HARRY I. HYLTON, ADMINISTRATOR, APPELLANT, V. EMMA KRUEGER ET AL., APPELLEES.

294 N. W. 485

FILED NOVEMBER 8, 1940. No. 30882.

*Benton Perry,* for appellant.

*Phil B. Campbell* and *Mills & Mills, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

This is a suit by the administrator with will annexed of the estate of Eva Krueger, deceased, to foreclose an equitable lien, under a reservation in a deed, for some annuity payments of $300 each, claimed to have accrued in favor of plaintiff's decedent from January 1, 1926, until her death in August, 1935. The trial court, after a hearing on the merits, dismissed plaintiff's action, on the ground that the annuity obligation had been validly modified by parol, and, as modified, had been fully performed and the lien thereby discharged, and that the suit was accordingly without equity. Plaintiff has appealed.

The case has been before us previously in *Hylton v. Krueger,* 134 Neb. 66, 277 N. W. 792, on the sufficiency of the petition as against a demurrer, and reference can easily be made to that opinion for a statement of its allegations.

It appears that in 1904 Fred Krueger, who was the husband of defendant Emma Krueger and the father of the other defendants, entered into an oral agreement with his parents, August and Eva Krueger, to pay them or the survivor, for life, an annuity of $100 and to supply them with farm provisions, in consideration of which they agreed to convey to him a 320-acre farm. Fred Krueger made the annuity payments and furnished the provisions pursuant to the agreement until his death in 1917, but without ever receiving a conveyance of the property. Upon his death, August and Eva Krueger entered into a lease agreement for the land with his widow, Emma Krueger, and executed a conveyance of the title thereto to Fred and Emma Krueger's children. These instruments, which were executed together and were recorded, provided that Emma Krueger should have the right to occupy the land during

her lifetime, but should have no other interest in the property; that she should pay August and Eva Krueger, and the survivor of them until the latter's death, the sum of $300 per year; that, if Emma Krueger died before the annuity obligation had been discharged, her children, to whom the title had been conveyed, should continue the payments until August and Eva Krueger both were dead; and that the annuities to be paid were to constitute a specific reservation from the title conveyed.

According to defendants' contention, a few days after the lease agreement became operative in 1917, and before any breach had occurred, it was agreed orally between August and Eva Krueger and Emma Krueger that the obligation should be modified to require Emma Krueger to pay, instead of an annuity of $300, the sum of $100 annually, and to furnish August and Eva Krueger and the survivor of them with such provisions from the farm as she was able to supply and as they might require. It was contended further that this modified agreement continued in effect and was duly complied with by Emma Krueger until August Krueger's death, and that at that time another oral modification was agreed upon between Eva Krueger and Emma Krueger, by which no more cash payments were to be made, but Emma Krueger was simply to furnish Eva Krueger with such farm provisions as she might request. The contract as thus modified was claimed to have been duly recognized by both Eva Krueger and Emma Krueger and to have been faithfully performed down to the time of Eva Krueger's death.

The evidence leaves us with the clear conviction, as it did the trial judge, that the parol modifications were made, as defendants contended, and that Emma Krueger thereafter performed all the obligations of the modified agreement. Since August and Eva Krueger were deceased, Emma Krueger could not, of course, testify to the conversations or the circumstances by which the modifications were created. There was disinterested testimony, however, to the effect that, at the time the first modification is claimed to

have been made, August and Eva Krueger declared that they wanted Emma Krueger to occupy the land on the same basis as her deceased husband—by making payments of $100 annually and furnishing them with farm provisions. This declaration was repeated on several occasions, and the record sufficiently indicates that the parties proceeded on this basis until August Krueger's death. While any annuity payments that might otherwise have accrued under the original agreement prior to 1926 are not here involved, under plaintiff's petition, the oral modification made in 1917 serves in some degree to explain the situation and the action of the parties in connection with the second modification.

There is testimony on the part of disinterested witnesses that, after August's death, Eva Krueger declared that she did not want any more cash payments, as she did not need the money, and that all that she desired in the future was such farm products and provisions as she might need and request. It sufficiently appears that, until the time Eva Krueger went to live with one of her daughters at Gresham in 1927, Emma Krueger continuously brought all kinds of supplies and provisions to her home in Columbus,—meat, lard, butter, eggs, honey, wood, cobs, chicken feed, etc.,—and that after 1927, Eva Krueger, instead of asking to have provisions delivered to her, used to come to the farm and stay as long as she desired, on occasion from six to eight weeks at a time.

We are satisfied from this evidence, as well as from other circumstances in the record, that Eva Krueger agreed that Emma Krueger's obligation was to be performed and discharged in the manner in which defendants claimed; that Emma Krueger fully performed her obligations under the modified agreement; and that the parties intended that this performance should operate to release the lien reserved in the deed and should not leave Eva Krueger's estate with any claim such as is sought to be enforced here.

But, plaintiff contends that it was incompetent to permit defendants to allege and prove the oral modification upon

which they relied, and the performance thereof, because such modification was without consideration and was within the statute of frauds. Defendants answer this contention with the rules announced in *Bowman v. Wright*, 65 Neb. 661, 91 N. W. 580, where, in an opinion by Commissioner Pound, it was held:

"There is a clear distinction between parol modification of an executory written agreement before breach and before the time for performance has arrived, and an attempt to satisfy a liquidated and accrued indebtedness by payment and acceptance of a less sum.

"While executory and before a breach, the terms of a written contract may be changed by a subsequent parol agreement; and such subsequent agreement requires no new consideration.

"Where, however, the contract is one required to be in writing by the statute of frauds, there must be consideration for a modification by waiving some of its requirements, or else such new agreement must be executed.

"In such case, if the terms of the new agreement have been fully carried out, the original obligation is discharged, though there was no additional consideration.

"Hence, a parol agreement, reducing for the future the rent stipulated in a written lease, is binding after the amount provided for in the new agreement has been paid and accepted in full during the whole term."

This decision has been the subject of text criticism in its application to a unilateral contract for the payment of a liquidated sum of money, though unmatured, where the parol modification makes no other change in the contract terms except to provide for the payment of a lesser sum than the original obligation. 1 Williston, Contracts (Rev. ed.) sec. 120. It is unnecessary, however, to deal with that criticism here, for the modification upon which defendants rely in this case changed the form and nature of the original obligation, and thus clearly rested upon an adequate consideration. Under the modified agreement, Emma Krueger, instead of being required to pay money, became obligated

to supply farm provisions without pecuniary admeasurement.

Nor is it of importance here whether the modification involved was or was not within the statute of frauds. Its complete performance made the statute in any event inapplicable. *Lucas v. County Recorder of Cass County,* 75 Neb. 351, 106 N. W. 217. Certainly, where, as in this case, there has been both a valuable consideration for the parol modification and complete performance or execution of the ensuing agreement, the statute of frauds can present no difficulty. *Northern Wyoming Land Co. v. Butler,* 252 Fed. 971, 164 C. C. A. 479.

The relationship of the first and second modifications does not call for any discussion in the situation before us. Plaintiff denies the validity and enforceability of both of them. While, as we have already stated, there could be no prejudice to plaintiff in showing the conduct of the parties under the first modification, to indicate the status with which they were recognizedly dealing, it may be treated as having been rescinded and nullified, and as having left Emma Krueger's obligation to supply farm provisions as a direct modification of the annuity obligation.

A further discussion of plaintiff's contentions is unnecessary under the views here taken. We agree that the trial court properly dismissed plaintiff's action.

AFFIRMED.